## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE EVERGREEN ASSOCIATION INC.,<br>a New York nonprofit corporation, doing<br>business as Expectant Mother Care and<br>EMC Frontline Pregnancy Centers,<br><br>   Plaintiff,<br><br> v.<br><br>ANDREW M. CUOMO, in his official<br>capacity as the Governor of the State of<br>New York; ROBERTA REARDON, in<br>her official capacity as the Commissioner<br>of the Labor Department of the State of<br>New York; LETITIA JAMES, in her<br>official capacity as the Attorney<br>General of the State of New York, and<br>THE CITY OF NEW YORK, a New York<br>municipal corporation,<br><br>   Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

### Introduction

1.   Plaintiff, which operates pregnancy crisis centers throughout New York City with the goal of saving children from abortion, seeks judicial review of two similar laws, one from the State of New York (State) and one from New York City (City), which add employment discrimination protections for "reproductive health" decisions made by employees.

2.   In order to further its mission, Plaintiff hires and employs only employees who adhere to Plaintiff's position on and opposition to abortion. According to the two challenged laws, this is unlawful discrimination, and Plaintiff's entirely pro-life focused organization should be required to consider candidates who are pro-choice and to employ those who have abortions.

3.     The two challenged laws directly interfere with the mission of Plaintiff by forbidding it from making employment decisions based on "reproductive health" decisions of employees, including the decision to have an abortion.

4.     The two challenged laws constitute a coordinated attempt to invade the affairs of pro-life organizations such as Plaintiff by forcing them to employ and associate with those persons who do not share or live by the organization's integral beliefs regarding opposition to abortion. These requirements undermine the very mission and existence of Plaintiff, which is to promote life and oppose abortion.

5.     The two challenged laws are existential threats to Plaintiff. In addition to crippling fines and statutory damages imposed by the laws in the case of a violation, Plaintiff's donor funding would be compromised if Plaintiff were to agree to employ those who have abortions, use abortifacient drugs, or defy Plaintiff's beliefs regarding sexual morality.

6.     Plaintiff seeks a declaration that both the State and City laws are unconstitutional and void, as well as an injunction against enforcement of the laws against Plaintiff.

**Jurisdiction, Venue, Requested Relief and Standing**

7.     This is an action for declaratory and injunctive relief under 28 U.S.C. §§ 1331, 1343(a)(4), 2201 and 2202, and in accord with Federal Rules of Civil Procedure 57 and 65.

8.     Plaintiff seeks redress for federal constitutional violations through 42 U.S.C. § 1983.

9.     Plaintiff is a New York nonprofit corporation headquartered in the City of Yonkers.

10.     Defendants are officers of the State of New York and The City of New York.

11.     Venue lies in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims detailed here occurred in this district, and also because at least one of the Defendants resides in this district and all of the Defendants reside in the State of New York.

12.     Plaintiff seeks a declaration that both the State and City laws are unconstitutional and void, as well as an injunction against enforcement of the laws against Plaintiff.

13.     Plaintiff has standing because of the injury or threatened injury it faces as a result of the challenged laws. Instead of exempting organizations such as Plaintiff whose entire existence is focused on opposing and preventing abortion, Defendants leave Plaintiff exposed to costly litigation and enforcement actions by state and city officials, forcing Plaintiff to defend itself by pleading well known and established constitutional rights.

## The Parties

### Plaintiff

14.     Plaintiff The Evergreen Association, Inc. is a New York nonprofit corporation with its principal place of business in the City of Yonkers, County of Westchester, State of New York. It is tax exempt under Section 501(c)(3) of the U.S. Internal Revenue Code.

15.     Plaintiff does business as Expectant Mother Care and EMC Frontline Pregnancy Centers.

### Defendants

16.     Defendant Andrew Cuomo, sued here in his official capacity, is the Governor of the State of New York. Governor Cuomo is the chief executive of the State of New York and must "take care that the laws are faithfully executed." N.Y. Const. art. IV, § 3. Governor Cuomo has final decision-making authority over the State laws challenged herein.

17.     Defendant Letitia James, sued here in her official capacity, is the Attorney General of New York, whose office oversees the Labor Bureau and criminally enforces New York's Labor Law, including Senate Bill 660.

18.     The State's Labor Law provides that "[a]ny person who violates or does not comply with any provision of the labor law, any rule, regulation or lawful order of the [Labor Commissioner] . . . [is] guilty of a misdemeanor and upon conviction shall be punished . . . by a fine of not more than one hundred dollars." N.Y. Lab. Law § 213.

19.     Section 214 of the State's Labor Law provides that "[t]he attorney-general may prosecute every person charged with the commission of a criminal offense in violation of this chapter, or of any rule, regulation or order made thereunder, or in violation of the laws of this state, applicable to or arising out of any provision of this chapter or any rule, regulation or order made thereunder."

20.     Defendant Roberta Reardon, sued here in her official capacity, is the Commissioner of the State's Department of Labor. Commissioner Reardon is required and empowered by Section 21 of the State's Labor Law to enforce SB 660, which is part of the Labor Law.

21.     Defendant the City of New York is a municipal corporation organized under the laws of the State of New York, with its principal place of business located at City Hall, New York, New York.

## FACTUAL HISTORY

### I.  Plaintiff's Operations

22.     Plaintiff is legally organized in the State of New York as The Evergreen Association, Inc. Christopher T. Slattery is the founder and president.

23.     Plaintiff does business as Expectant Mother Care and EMC Frontline Pregnancy Centers.

24.     Plaintiff was formed in October of 1985 and has operated continuously since then.

25.     Plaintiff has operations in Brooklyn (Kings County), The Bronx, Queens and White Plains.

26.     Plaintiff's headquarters are located at 61 Lewis Parkway in the City of Yonkers, County of Westchester, State of New York.

27.     Plaintiff has five employees currently but generally has between five and seven employees. Plaintiff also has volunteers.

28.     Plaintiff serves women primarily in New York but also in some neighboring states.

29.     Plaintiff believes all human life is equally valuable and deserving of protection, from fertilization to natural death. Plaintiff believes that every abortion claims an innocent life.

30.     Plaintiff operates pregnancy care centers which exist to serve women considering abortion, along with their unborn children. Plaintiff strives to provide the compassion, concern, and support necessary to enable women to carry their unborn children to term.

31.     Plaintiff's mission is to serve primarily poor, low-income and working pregnant women in distressed conditions, many of whom are contemplating abortion. Plaintiff provides counseling, education, ultrasounds and information to these women during their decision-making processes in an untimely pregnancy. Counseling by Plaintiff is from a life-affirming perspective only.

32.     Plaintiff believes that abortion compounds actual and perceived problems and difficulties for a woman, rather than resolving them.

33.     Plaintiff believes the purpose of medical care is to heal and maintain the health of the individual and that abortion does neither for either the woman or the baby.

34.     As a result, Plaintiff does not recommend, provide, or refer for abortions, contraceptives, birth control, or abortifacient drugs or devices.

35.     To fulfill its mission, Plaintiff hires employees who agree with, personally adhere to, and effectively convey organizational beliefs regarding reproductive health decisions, including but not limited to decisions related to abortion.

36.     Plaintiff expects its employees and other agents to abide by and agree with Plaintiff's position on abortion, in both their work life and private life.

37.     Plaintiff will not hire or retain any employee who refuses to act in accordance with Plaintiff's position on abortion.

38.     Plaintiff specifically asks prospective employees if they are pro-choice or pro-life, and pro-choice candidates are not considered for employment.

39.     Plaintiff advertises its employment positions (including nurses, counselors and technicians) publicly and specifically states that it is seeking only pro-life candidates.

40.     Plaintiff is not a religious or denominational institution or organization, or an organization which is operated, supervised or controlled by or in connection with a religious organization.

## II.  The State of New York's "Boss Bill"

### A. The State's Non-Discrimination Laws Prior to 2019

41.     Section 296 of the State's Human Rights Law addresses civil rights in the State and creates a Division of Human Rights "to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and

intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; . . ." N.Y. Executive Law, Article 15, § 290.

42.     Prior to 2019, the State protected only the following classes: age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status. N.Y. Executive Law, Article 15, § 296(a).

43.     Pregnancy-related conditions were and are protected as part of the State's definition of "disability." N.Y. Executive Law, Article 15, § 292(21-e, 21-f).

44.     Section 296 bars discrimination in the workplace; more specifically, Section 296 makes it illegal, among other things, to make hiring or firing decisions, or compensation decisions, on the basis of one of the delineated protected classes.

## B.  The "Boss Bill"

45.     On January 22, 2019, a bill titled "A.584 Jaffee/S.660 Metzger," otherwise known as the Boss Bill, passed the New York State Assembly and Senate. The law is currently in effect.

46.     The Boss Bill was accompanied by two other abortion-rights laws passed by the State. First, the Reproductive Health Act (SB 240) legalizes abortion until the birth of the child if the abortion is deemed necessary to protect the "patient's . . . health." Second, the

Comprehensive Contraception Coverage Act (SB 659A) requires health insurers to provide no-cost coverage for contraceptives, including abortifacient drugs, in their health plans.

47.     The Boss Bill does not amend New York's Human Rights Law, but instead amends New York's Labor Law (Consolidated Laws of New York, Labor).

48.     The Boss Bill adds a new section (203-E) to Article 7 of the Labor Law.

49.     According to Bill S660, the purpose of the bill is to "prohibit employers from discriminating against employees based on the employee's or dependent's reproductive health decisions, and to provide remedies for such violations."

50.     The Boss Bill prohibits discrimination or any retaliatory action by an employer against an employee on the basis of the employee's or his or her dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service.

51.     Specifically, an employer shall not:

(a) discriminate nor take any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making, including, but not  limited to, a decision to use or access a particular drug, device or medical service; or

(b) require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions, including use of a particular drug, device, or medical service.

52.     "Reproductive health decision making" is not defined.

53.     Under the Boss Bill, an employee's decision to "use or access a particular drug, device or medical service," *e.g.*, the use of an abortifacient drug or having an abortion, certainly cannot serve as a reason for adverse action by an employer.

54.    The term "reproductive health decision making" could include not only contraception and abortion, but also *in vitro* fertilization, human cloning, sterilization, sex reassignment surgery, surrogacy, and other highly controversial procedures.

55.    "Reproductive health decision making" appears to go far beyond mere use of a drug or service. A decision as to reproductive health could be a decision to support or publicly advocate for abortion rights.

56.    The Boss Bill provides employees a private right of action to enforce its requirements against employers alleged to have violated its provisions.

57.    The Boss Bill subjects violators to damages, including back pay and attorney fees, injunctive relief, reinstatement, and liquidated damages.

58.    Section 214 of New York's Labor Law makes violation of any rule within the same chapter as the Boss Bill a criminal offense that may be prosecuted by the State's Attorney General.

59.    Section 21 of New York's Labor Law provides that "[t]he commissioner . . . shall enforce all the provisions of [Chapter 31, the Labor Law] and may issue such orders as he finds necessary directing compliance with any provision of this chapter, except as in this chapter otherwise provided." N.Y. Lab. Law § 21.

60.    The Labor Law provides that "[t]he attorney-general may prosecute every person charged with the commission of a criminal offense in violation of this chapter, or of any rule, regulation or order made thereunder, or in violation of the laws of this state, applicable to or arising out of any provision of this chapter or any rule, regulation or order made thereunder." N.Y. Lab. Law § 214.

61.     The Attorney General is required to "[p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state." N.Y. Exec. Law § 63(1).

62.     The legislative history of the Boss Bill, as well as the text of the bill itself, offer no examples of adverse employment consequences caused by any employer decisions in light of employee reproductive health choices.

63.     When directly questioned as to whether discrimination on the basis of reproductive health decisions was actually occurring in New York State, Assemblywoman Ellen Jaffee, the main sponsor of the Boss Bill, cited no examples of discrimination on the basis of reproductive health decisions.

### III.  New York City's
### Introduction 863-A/Local Law No. 20 of 2019

### A.  The City's Non-Discrimination Laws Prior to 2019

64.     Title 8 of the City's Administrative Code addresses civil rights in the City and creates a Commission on Human Rights "with power to eliminate and prevent discrimination from playing any role in actions relating to employment, public accommodations, and housing and other real estate, and to take other actions against prejudice, intolerance, bigotry, discrimination, sexual harassment and bias-related violence or harassment as herein provided . . ." Administrative Code § 8–101.

65.     The City protected the following classes: race, color, creed, age, national origin, alienage or citizenship status, gender, sexual orientation, disability, marital status, partnership status, caregiver status, uniformed service, any lawful source of income, status as a victim of domestic violence or status as a victim of sex offenses or stalking; whether children are, may be, or would be residing with a person; or conviction or arrest record. Administrative Code § 8–101.

66.     Section 8-107(1) bars discrimination in the workplace; more specifically, Section 8-107(1) makes it illegal, among other things, to make hiring or firing decisions, or compensation decisions, on the basis of one of the delineated protected classes.

67.     Section 8-107(1) also makes it illegal for employers to:

declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

68.     Where the commission finds that a person has engaged in an unlawful discriminatory practice, the commission may impose a civil penalty of up to $250,000. Administrative Code § 8–126. The City's law also provides for a private cause of action. Administrative Code § 8–502.

**B.  Introduction 863-A/Local Law No. 20 of 2019**

69.     The New York City Council (City Council) approved Introduction 863-A on December 20, 2018. Introduction 863-A was an amended version of Introduction 863, which was introduced by the City Council on April 25, 2018.

70.     Introduction 863-A adds "sexual and reproductive health decisions" to the protected classes described above and delineated in Administrative Code § 8–101.

71.     The term "sexual and reproductive health decisions" is defined by the City as follows:

any decision by an individual to receive services, which are arranged for or offered or provided to individuals relating to sexual and reproductive health, including the reproductive system and its functions. Such services include, but are not limited to, fertility-related medical procedures, sexually transmitted disease prevention, testing, and treatment, and family planning services and counseling,

such as birth control drugs and supplies, emergency contraception, sterilization procedures, pregnancy testing, and abortion.

Introduction 863-A(2).

72.     Section 3 of Introduction 863-A amends Administrative Code § 8–107's relevant employment restrictions as follows (amendments underlined):

1. Employment. It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.
...

(d) For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

73.     Section 4 of Introduction 863-A amends portions of Administrative Code § 8–107 which apply to job training programs. Section 4 makes it illegal for, among other things, employers to deny a person the right to be admitted to or participate in a guidance program, an apprentice training program, on-the-job training program, or other occupational training or retraining program, or to discriminate against any person in his or her pursuit of such program.

74.     The City Council sent the bill to the Mayor's office on December 20, 2018 and it became law on January 20, 2019 because the Mayor did not sign or veto it.

75.     The City Council then assigned Introduction 863-A the title "Local Law No. 20 of 2019."

76.     Local Law No. 20 of 2019 became effective on May 20, 2019.

### IV.  Plaintiff's Need for Relief

77.     Plaintiff is subject to both the Boss Bill and Local Law No. 20 of 2019.

78.     The Boss Bill and Local Law No. 20 of 2019 force Plaintiff to hire, or refuse to terminate, employees who make or have made the decision to have an abortion—a decision that goes against fundamental tenets of Plaintiff's mission. They restrict Plaintiff's freedom to associate with like-minded individuals by forbidding it from enforcing employment standards of conduct in accordance with organizational beliefs regarding abortion, contraception, and sexual morality.

79.     The Boss Bill and Local Law No. 20 of 2019 also prevent Plaintiff from considering and acting on an employee's decision to support or publicly advocate for abortion rights or the use of abortifacient drugs.

80.     The Boss Bill and Local Law No. 20 of 2019 impose an impermissible penalty and chill on Plaintiff's speech.

81.     The Boss Bill and Local Law No. 20 of 2019 prohibit Plaintiff from spreading its message to its employees regarding, among other things, abortion, contraception, and sexual morality.

82.     The Boss Bill and Local Law No. 20 of 2019 further deter Plaintiff from spreading its pro-life messages and employment requirements to potential employees and the public more generally.

83.     Enforcement of The Boss Bill and/or Local Law No. 20 of 2019 will irreparably harm Plaintiff by infringing on its First Amendment rights to expressive association and free speech, as well as its Fourteenth Amendment right to due process, because the laws are void for vagueness.

84.     If Plaintiff were to comply with The Boss Bill and/or Local Law No. 20 of 2019, it would undermine and compromise Plaintiff's pro-life mission, messages, and purpose, and compel Plaintiff to associate with employees who do not share such mission, messages, and purpose.

85.     The Boss Bill and Local Law No. 20 of 2019 hinder Plaintiff's ability to hire new employees due to the uncertainties surrounding how to find, recruit, and hire new employees consistent with its pro-life mission, messages, and purpose.

86.     Plaintiff has no choice but to continue to operate in a manner consistent with its mission and beliefs, because complying with The Boss Bill and/or Local Law No. 20 of 2019 would compel it to violate its core principles, which it cannot do.

87.     Plaintiff intends to take adverse employment action against employees who choose to procure abortions or otherwise violate its organizational policies regarding abortion and sexual morality.

88.     Plaintiff fears the harms of prosecution, enforcement actions, and private suits under The Boss Bill and Local Law No. 20 of 2019 if it fails to comply.

89.     The Boss Bill's and Local Law No. 20 of 2019's penalties would significantly harm Plaintiff's ability to continue its pro-life and expressive operations.

90.     Plaintiff's refusal to comply with The Boss Bill and Local Law No. 20 of 2019 will subject it to enforcement actions by Defendants, including potential fines, prosecution and suits by private litigants that may include various statutory damages.

91.     The Boss Bill and Local Law No. 20 of 2019 are existential threats to Plaintiff. If Plaintiff does not comply, it will be subject to crippling fines and statutory damages. But Plaintiff's donor funding would be compromised if Plaintiff were to agree to employ those who have abortions, use abortifacient drugs, or defy Plaintiff's beliefs regarding sexual morality.

92.     The Boss Bill and Local Law No. 20 of 2019 coerce Plaintiff to betray its valid and honorable mission of preventing abortion and helping women in crisis pregnancies.

93.     Plaintiff faces a credible threat of enforcement of the Boss Bill and Local Law No. 20 of 2019 and should not be required to await and undergo an enforcement action in order to seek relief.

94.     The impact of chilling and deterring Plaintiff from exercising its federal constitutional rights constitutes immediate and irreparable harm to Plaintiff caused by the Boss Bill and Local Law No. 20 of 2019.

95.     Unless the Boss Bill and Local Law No. 20 of 2019 are declared unlawful and enforcement of them enjoined, Plaintiff will continue to suffer irreparable injury.

96.     The Boss Bill and Local Law No. 20 of 2019 are causing serious ongoing hardship to Plaintiff concerning its employment decisions. Plaintiff needs relief now.

97.     Plaintiff has no adequate or speedy remedy at law to correct or redress the deprivation of its rights caused by the Boss Bill and Local Law No. 20 of 2019.

## COUNT I

**VIOLATION OF RIGHT TO ASSOCIATION
UNDER THE FIRST AMENDMENT
(against State officials)**

98.    Plaintiff repeats and re-alleges Paragraphs 1 through 97 of this Complaint.

99.    The First Amendment recognizes and protects the right to freedom of association.

100.    The First Amendment protects the right of persons to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

101.    Plaintiff stresses the dignity of human life, including opposition to abortion and abortifacient drugs, and it and its employees associate with others for the purpose of more effectively expressing that viewpoint. Plaintiff's insistence on like-mindedness in this common cause among its employees is constitutionally protected to allow it to engage in expressive association.

102.    Plaintiff engages in expressive association when it counsels clients.

103.    The Boss Bill restricts the freedom of organizations such as Plaintiff to form expressive associations of those who share a common commitment to the dignity of human life. The right to associate necessarily includes the right to exclude from association.

104.    The State violates Plaintiff's right to freedom of association by denying it the right to organize its staff in accordance with its belief that abortion is a grave moral wrong.

105.    The Boss Bill chills, deters and restricts Plaintiff from organizing its staff in accordance with its position on abortion.

106.    Forcing Plaintiff to include staff or employees who do not share Plaintiff's beliefs regarding abortion and reproductive health decisions would compromise Plaintiff's pro-life message and mission.

107.    The Boss Bill is overbroad. It is not tailored at all, much less narrowly tailored, to further any governmental interest, and even if the state could proffer an interest of some kind, the law does not represent the least restrictive means of achieving any such interest.

108.    Absent declaratory and injunctive relief against application and enforcement of the Boss Bill, Plaintiff will suffer irreparable harm.

## COUNT II

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION –
VOID FOR VAGUENESS
(against State officials)**

109.    Plaintiff repeats and re-alleges Paragraphs 1 through 97 of this Complaint.

110.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiff due process of law.

111.    The Fourteenth Amendment prohibits State officials from penalizing association and other behavior based on vague standards. This is especially so where the expression or conduct is subject to criminal sanction.

112.    A law must provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and the law must provide explicit standards to law enforcement personnel, judges and juries.

113.    Vague laws trap the unwary by not providing fair notice about what is permitted and what is prohibited. Such laws also provide a platform for spurious and agenda-driven complaints and prosecutions. Explicit standards are required to prevent arbitrary and discriminatory application of the law.

114.    A vague law is particularly troublesome where First Amendment freedoms are at stake because it chills the exercise of those freedoms by causing citizens to "steer far wider than the unlawful zone" as opposed to when "the boundaries of the forbidden area were clearly marked." *Grayned v. Rockford*, 408 U.S. 104, 108-09 (1972). Laws that interfere with First Amendment freedoms require a high level of specificity, and laws with criminal penalties get special scrutiny.

115.    The Boss Bill's lack of definition of "reproductive health decision making" is both vague and sweeping in its scope. The term appears to be so broad that it applies not just to a medical decision but also to political speech or activism regarding abortion, the use of abortifacients as "contraception," and even to those who advocate for or perform abortions.

116.    The term "reproductive health decision making" could include not only contraception and abortion, but also *in vitro* fertilization, human cloning, sterilization, sex reassignment surgery, surrogacy, and other highly controversial procedures.

117.    The Boss Bill also fails to define "employee," "employer," and a number of other key terms necessary for complete interpretation.

118.    The Boss Bill is void for vagueness because it fails to provide adequate notice to Plaintiff and third parties not before the Court of how it is enforceable and by what means, which will lead to arbitrary and agenda-driven enforcement. This is especially so when enforcement is by criminal sanction.

119.    The Boss Bill is void for vagueness, both on its face and as applied to Plaintiff, and thus it violates the Due Process Clause of the Fourteenth Amendment.

120.    Absent declaratory and injunctive relief against application and enforcement of the Boss Bill, Plaintiff will suffer irreparable harm.

18

## COUNT III

**VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT**
**(against State officials)**

121.   Plaintiff repeats and re-alleges Paragraphs 1 through 97 of this Complaint.

122.   The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits abridging speech.

123.   All acts of the State officials alleged herein were done and are continuing to be done under color of state law.

124.   The Boss Bill restricts Plaintiff's right to free speech because it compels Plaintiff to speak a message contrary to its beliefs not only to its current employees, but also to prospective employees and the public in general.

125.   The Boss Bill's discrimination prohibitions cause Plaintiff to limit and censor its constitutionally guaranteed speech regarding abortion and the dignity and value of life, which expression could otherwise be used as evidence of discrimination under the Boss Bill, as well as evidence of a hostile work environment and thus job harassment.

126.   Plaintiff's speech is further suppressed by restricting it from expressing preferences as to having employees that share common beliefs as to abortion, and from outwardly espousing pro-life values.

127.   The rights of Plaintiff, in an employment context, to discuss with its employees and applicants for employment the subject of abortion is protected speech under the First Amendment.

128.   By barring said speech and expressive conduct, the State has interfered with Plaintiff's constitutionally protected speech.

129.   Because it is substantially overbroad, the Boss Bill chills and otherwise deprives Plaintiff and third parties not before the Court from engaging in expressive activities concerning abortion, as guaranteed by the Free Speech Clause. The Boss Bill is thereby unconstitutional on its face and as applied.

130.   The Boss Bill constitutes a prior and on-going restraint on Plaintiff's speech in violation of the Free Speech Clause.

131.   The content-based restrictions promulgated in the Boss Bill are not supported by a compelling governmental interest and are not narrowly tailored to accomplish any compelling governmental interest.

132.   The First Amendment protects the freedom of speech, including the right of groups to speak out and to thereby persuade all who will listen to refrain from engaging in conduct that they consider gravely immoral. The Boss Bill discriminates against Plaintiff's speech on the basis of its viewpoint regarding what it describes as "reproductive health decisions."

133.   The Boss Bill is therefore subject to strict scrutiny, which it cannot survive, because it is not narrowly tailored to accomplish any compelling governmental interest.

134.   As a direct and on-going result of the State officials' abridgment of Plaintiff's Free Speech rights, as alleged above, Plaintiff is suffering irreparable harm for which there is no adequate remedy at law.

## COUNT IV

**VIOLATION OF RIGHT TO EXPRESSIVE ASSOCIATION
UNDER THE FIRST AMENDMENT
(against the City)**

135.   Plaintiff repeats and re-alleges Paragraphs 1 through 97 of this Complaint.

136.    The First Amendment recognizes and protects the right to freedom of association.

137.    The First Amendment protects the right of persons to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

138.    Plaintiff stresses the dignity and value of human life, including opposition to abortion, and it and its employees associate with others for the purpose of more effectively expressing that viewpoint. Plaintiff's insistence on like-mindedness in this common cause among its employees is constitutionally protected to allow it to engage in expressive association.

139.    Plaintiff engages in expressive association when it counsels clients.

140.    Local Law No. 20 of 2019 restricts the freedom of organizations such as Plaintiff to form expressive associations of those who share a common commitment to the dignity and value of human life. The right to associate necessarily includes the right to exclude from association.

141.    The City violates Plaintiff's right to freedom of association by denying it the right to organize its staff, to communicate to the staff, and to circulate written materials in accordance with its beliefs that abortion is a grave moral wrong.

142.    Local Law No. 20 of 2019 chills, deters and restricts Plaintiff from organizing its staff in accordance with its beliefs about abortion.

143.    Forcing Plaintiff to include staff or employees who do not share Plaintiff's beliefs regarding abortion and reproductive health decisions would compromise Plaintiff's pro-life message and mission.

144.    Local Law No. 20 of 2019 is overbroad. It is not tailored at all, much less narrowly tailored, to further any governmental interest, and even if the City could proffer an

interest of some kind, the law does not represent the least restrictive means of achieving any such interest.

145.     Absent declaratory and injunctive relief against application and enforcement of Local Law No. 20 of 2019, Plaintiff will suffer irreparable harm.

## COUNT V

## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (against the City)

146.     Plaintiff repeats and re-alleges Paragraphs 1 through 97 of this Complaint.

147.     The Equal Protection Clause of the Fourteenth Amendment requires that government treat equally all persons similarly situated.

148.     This requirement of equal treatment applies to organizations as well as to individuals.

149.     In the City's religious exemptions, the City has excused certain religious organizations from portions of the law which are challenged in this lawsuit. Administrative Code § 8–107(12).

150.     The City limits the religious exemption to any "any religious or denominational institution or organization or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization . . ." Administrative Code § 8–107(12).

151.     The City does not exempt entities it does not recognize as religious organizations, such as Plaintiff, yet Plaintiff is no less motivated in its opposition to abortion or in its right to associate.

152.    By extending exemptions to religious organizations, but failing to extend them to Plaintiff, the City has treated Plaintiff differently from similarly situated—but religious—entities.

153.    The City thus violates the rights of Plaintiff, secured to it by the Equal Protection Clause of the Fourteenth Amendment.

154.    Absent declaratory and injunctive relief against application and enforcement of Local Law No. 20 of 2019, Plaintiff will suffer irreparable harm.

**COUNT VI**

**VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT**
**(against the City)**

155.    Plaintiff repeats and re-alleges Paragraphs 1 through 97 of this Complaint.

156.     The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits abridging speech.

157.    All acts of the City alleged herein were done and continue to be done under color of state law.

158.    Section 3 of Local Law No. 20 of 2019 makes the following conduct illegal:

> For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

Emphasis added.

159.    These discriminatory prohibitions cause Plaintiff to limit and censor its constitutionally guaranteed speech regarding abortion and the dignity and value of life, which expression could otherwise be used as evidence of discrimination under the City's Human Rights Law, as well as evidence of a hostile work environment and thus job harassment.

160.    Local Law No. 20 of 2019 restricts Plaintiff's right to free speech because it compels Plaintiff to speak a message contrary to its beliefs not only to its current employees, but also to prospective employees and the public in general.

161.    The rights of Plaintiff, in an employment context, to discuss with its employees and applicants for employment the subject of abortion is protected under the First Amendment.

162.    By barring said speech and expressive conduct, the City has interfered with Plaintiff's constitutionally protected speech.

163.    Because it is substantially overbroad, Local Law No. 20 of 2019 chills and otherwise deprives Plaintiff and third parties not before the Court from engaging in expressive activities concerning abortion guaranteed by the Free Speech Clause. Local Law No. 20 of 2019 is thereby unconstitutional on its face and as applied.

164.    The content-based restrictions of the City promulgated in Local Law No. 20 of 2019 are not supported by a compelling governmental interest and are not narrowly tailored to accomplish any compelling governmental interest.

165.    Local Law No. 20 of 2019 constitutes a prior and on-going restraint on Plaintiff's speech in violation of the Free Speech Clause.

166.    The First Amendment protects the freedom of speech, including the right of groups to speak out and to thereby persuade all who will listen to refrain from engaging in conduct that they consider gravely immoral. Local Law No. 20 of 2019 discriminates against

Plaintiff's speech on the basis of its viewpoint regarding what it describes as "reproductive health decisions."

167.    Local Law No. 20 of 2019 is therefore subject to strict scrutiny, which it cannot survive, because it is not narrowly tailored to accomplish any compelling governmental interest.

168.    As a direct and on-going result of the City's abridgment of Plaintiff's Free Speech rights, as alleged above, Plaintiff is suffering irreparable harm for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court:

a.    Declare the Boss Bill, including, but not limited to, the Section 203-E which it added to Article 7 of the Labor Law of the State of New York, and Local Law No. 20 of 2019 unlawful, invalid, unenforceable, null and void, and otherwise of no force and effect for some or all of the reasons stated above;

b.    Issue an injunction prohibiting the State of New York from enforcing the Boss Bill and the City of New York from enforcing Local Law No. 20 of 2019 against Plaintiff, as well as against others not before the Court where the said laws are facially unlawful;

c.    Award Plaintiff the costs of this action, reasonable attorney fees and expert fees pursuant to 42 U.S.C. 1988, and as otherwise provided by law; and

d.    Grant such other and further relief as the Court shall deem necessary and just.

Dated: January 21, 2020

<u>s/ Christopher A. Ferrara (CF-7123)</u>
CHRISTOPHER A. FERRARA, ESQ.
148-29 Cross Island Parkway
Whitestone, Queens, New York 11357
Telephone: (718) 357-1040
cferrara@thomasmoresociety.org
Special Counsel to the
**Thomas More Society**
309 West Washington Street, Suite 1250
Chicago, Illinois, 60606

J. Matthew Belz #MO-61088
Clayton Plaza Law Group
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
jmbelz@olblaw.com
*Pro hac vice application pending*

*Attorneys for Plaintiff*